HARRY W. LAIRD V. STATE.

No. 25351. June 13, 1951.
Rehearing Denied October 10, 1951.

Hon. E. E. Jordan, Judge Presiding.

*E. T. Miller,* and *E. O. Northcutt,* Amarillo, for appellant.—

*John Peterson* County Attorney, *McCarthy, Snodgrass, Aikman & Haynes,* and *Roy C. Snodgrass, Jr.,* all of Amarillo, and *George B. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for the offense of barratry as defined in Art. 430, P.C.

The complaint and information contained four counts, all of which were submitted to the jury who returned a general verdict in which they found appellant guilty as charged and assessed his punishment at a fine of $35.

Counts Nos. 1 and 2 charged, in slightly different language, that appellant on or about April 1, 1948, did unlawfully and wil-

fully instigate, excite and encourage one C. J. Hood to bring and prosecute a claim of said Hood against the Santa Fe Railway Company in which appellant had no interest, for his own profit and with the intent to distress and harass said company, while Counts 3 and 4 alleged that appellant did unlawfully and wilfully seek to obtain employment from C. J. Hood in such claim against said railway company by means of personal solicitation.

C. J. Hood testified that during his employment with the Santa Fe he received an injury; that appellant first contacted him by long distance telephone, then by local telephone in which he arranged a meeting at the Amarillo Hotel. On March 25, 1948, he first saw appellant, and on or about April 1, 1948, appellant and one Kalar came to his home in Amarillo.

Regarding the preliminary telephone calls, Wood testified in part as follows:

"Previous to the call from the Amarillo Hotel, he had told me by telephone what he wanted from the town of El Reno, which was about a week prior to the date of March 25, 1948. By that long distance telephone call, he told me who he was and said he understood I had been injured, and he would like to get in touch with me as to handling my case through some lawyers to sue the company."

Regarding the occasion of their first meeting, Hood testified:

"We got introduced. He told me what he wanted. * * * asked me if I would care to sign up with him on his contract to sue the company instead of settling with them. * * * On this occasion he wanted to know if I had any names or knew of any that was injured that would be interested in filing suit against the company.

"Other than the long distance call, I had, I had never seen nor heard of Harry W. Laird before in my lifetime."

And regarding their next meeting, the witness testified:

"He later came back to see me, in company with another party on about the first day of April, 1948, at my home. The name of the other party was John Kalar. * * *

"I had a conversation with Harry W. Laird and this man Kalar concerning my injury and my claim against the Santa Fe

Railroad. They came out to the house about nine. Wanted me to sign the contract. He told me how much money I could collect by suing the company through them; wanted me to sign a contract; and I hesitated; and he just kept talking about wanting me to sue the company.

"They made some statements to me trying to get me to turn my claim over to them to handle. They said I could make lots more money by going to Chicago; railroad fare, drinking whiskey, and cigarettes would be furnished, and I would get 35 to 65%; 35 and 65 is the way it would turn out. They explained that they would get 35% of the suit or settlement out of court and that I would get 65%.

"At no time did they attempt to get me not to bring any kind of suit."

Hood testified further that he did not sign any contract and that in September, 1948, he settled and was paid $6,850 by the Santa Fe.

The state also called to the stand W. A. McCreary, who testified that he received an injury while employed by the Santa Fe on August 1, 1948, and that appellant called him by telephone, and about 11 P.M. on September 1, 1948, came to his home in Shattuck, Oklahoma, advised that he had learned of his injury and said that he was representing a lawyer named Green who lived in Minneapolis.

"He said that this lawyer had no right to come and solicit business; that he was an out of state man; if he came in there to solicit it himself, that he would be disbarred, but if I would write the man, that would give him, well, we might say, authority to represent me in this case.

"He said if I wanted to write Mr. Green, he would help me prepare the letter; * * *"

The witness McCreary also failed to avail himself of the services offered by appellant or the recommended out-of-state lawyer.

John W. Reed testified that on April 2, 1948, which was the day following his visit with Hood, appellant contacted him by telephone, and came to his home in Canadian, Texas, accompanied by a man he introduced as Tautges. Reed testified that he signed a contract with Tautges, and that a suit was thereafter filed and settled for some $30,000, of which he re-

ceived some $18,000, for injuries he had received while in the employ of the Santa Fe. The original contract was offered in evidence wherein Tautges was retained to recover damages for Mr. Reed and was to receive 33-1/3% of the amount recovered either by suit or settlement. The acceptance shown on the contract reads: "The above retainer is hereby accepted this 2 day of April, 1948. By /s/ W.A.T. Attorney."

The principal complaints relate to the overruling of appellant's objections to the testimony of the witnesses McCreary and Reed as to their respective transactions with appellant which occurred subsequent to the date of the offense here charged, and to the trial court's refusal to withdraw such testimony upon appellant's motion.

The rule relied upon by appellant is expressed in 18 Tex. Jur. 53, as follows:

"In a prosecution for a particular crime, the accused is to be convicted, if at all, by evidence which tends to show that he is guilty of that offense alone and that evidence tending to show that he committed other offenses wholly disconnected from that for which he is on trial must be excluded."

An exception to such rule exists where intent or guilty knowledge is material and is either disputed or doubtful. See 18 Tex. Jur. 67. Evidence which is pertinent and tends to prove the crime alleged is not rendered inadmissible because it also tends to prove the commission of other crimes. See 18 Tex. Jur. 60.

The trial court, in paragraph 9 of his charge, limited the testimony complained of in the following language:

"If you consider such other offense, if any, you must limit your consideration solely for the purpose of showing the intent, motive, system or plan of the defendant as to the particular act charged in the information, if it does do so, and for no other purpose."

The complaint and information alleged that appellant had the intent to distress or harass the railroad company, and that he acted in the matter for his own profit.

Relying alone upon the transaction with Hood, the defense raised by the testimony of the state's witnesses and urged in argument here that appellant did not ask for a dime for himself

out of the transaction, and that he merely recommended his own lawyer to the injured Hood with no intent to harass the railway company could not well be overcome. In the absence of such a purpose or intent, no offense was shown in either of the transactions described in the testimony. Also, the McCreary matter occurred in Oklahoma, and it is not shown whether any law of that state was violated thereby.

The state, for the purpose of showing the necessary intent and of disproving such defensive theory, offered the evidence of Reed and thereby showed that on the day following his interview with appellant, he contacted Reed, identifying his companion as Attorney Tautges, and secured a contract to prosecute a like claim for Reed. The state also offered the witness McCreary who testified that a few months later but before the instant complaint and information were filed, at his home in Shattuck, Oklahoma, appellant sought to secure from him for another Minnesota attorney similar employment in connection with a like claim for injuries suffered by this employee of the Santa Fe.

The repeated acts of appellant with regard to contacting injured employees of this railway company for the purpose of soliciting or encouraging the prosecution of their claims are evidence of his intent to distress and harass said company, as well as evidence tending to show that he acted for his own profit.

As limited by the trial court in his charge, we find no reversible error in regard to the testimony of these witnesses.

The evidence being sufficient to sustain the conviction and no reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant complains that the original opinion did not dispose of his complaint to the court's charge to the jury.

This complaint is based upon the contention that there are four misdemeanor offenses alleged in the complaint. We think this view is in error. There were four counts describing the same

350

offense, which cannot be construed to be four separate offenses. These counts evidently were designed by the state to admit the proof in whatever form it may come. Having reached this conclusion it is not necessary to further discuss the motion, all of which is based on the position that there are four separate offenses alleged.

The motion for rehearing is overruled.